UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| -v.- | :  13 Cr. 268 (JMF) |
| BRYAN ZURIFF, | : |
| Defendant. | : |

----------------------------------------------------------------x

# THE GOVERNMENT'S SENTENCING MEMORANDUM

PREET BHARARA
United States Attorney
Southern District of New York
Attorney for the United States of America

Harris M. Fischman
Joshua A. Naftalis
Kristy J. Greenberg
Assistant United States Attorneys
    - Of Counsel -

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 18, 2013

BY ECF

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Foley Square, Room 2202
New York, New York  10007

   Re: United States v. Bryan Zuriff,
      13 Cr. 268 (JMF)

Dear Judge Furman:

  The Government respectfully writes in advance of the defendant's sentencing, currently scheduled for Monday, November 25, 2013 at 3:00 p.m.

  The Offense Conduct

  Bryan Zuriff, an otherwise successful Hollywood producer who was born into a life of wealth, operated an illegal, high-stakes sportsbook out of Los Angeles, California, that catered to high net-worth and celebrity clients.  In connection with his gambling business, Zuriff used pinnaclesports.com, along with other sports gambling websites operating illegally in the United States, to open accounts that clients used to place bets.  It was not uncommon for bets worth tens of thousands of dollars to be placed using these sites.  Zuriff assisted co-conspirators Hillel Nahmad, a/k/a "Helly," and Illya Trincher's illegal gambling operation by providing them with accounts at various websites that were operating illegally in the United States.  (*See* Zuriff Sentencing Mem. 7.)  These accounts were used by Nahmad, Trincher, and others, in part, to lay off bets that their sportsbook had received from clients.  For example, during a February 4, 2012 phone call intercepted on a wiretap, Trincher and Zuriff discussed laying off bets that had been taken on the Giants-Patriots Super Bowl:

   Zuriff: So you don't want any Patriot cross right now do you?

   Trincher: Meaning, do I want to take the Giants?

   Zuriff: Yeah.

   Trincher: No, I am looking to cross with people.

Zuriff: Alright. Ok, alright buddy. What was the tennis outcome? I have to figure out all my numbers with Helly [Nahmad] now.

Trincher: You lost. You had two matches, I think total.

Zuriff: Three matches I won, Ugoverich (ph) and lost the other.

Trincher: Yeah, I think the combination of the other two you lost, 51,000, I think.

Zuriff: How much?

Trincher: 51,000.

Zuriff: And then I won 25.

Trincher: I think so, yeah.

Zuriff: So I lost 26,000.

Trincher: I have an accountant though. I have to call him and ask.

Zuriff: Will you text me that.

Trincher: Yeah.

Zuriff: I know that you guys have won some money with Billy and Helly owes 89 or 90 from other shit.

Trincher: Yeah, absolutely.

Zuriff: *I just want to get our number heading into the Super Bowl game, because I have laid off a 100 of your guys' Patriot bets and then I held on; we like the over.*

Trincher: *Ok.*

Zuriff: *I held out on 50 of that over.*

Trincher: *Ok, perfect.*

Zuriff: So if you can hit me with that I can see that.

Trincher: I will 100%.

Zuriff: Thank you, Illya. Good luck.

       Trincher:  Thank you, pal.

(Emphasis added.) And during an April 27, 2012 call, Nahmad and Zuriff discussed an online gambling account that Zuriff had set up for Nahmad's gambling business:

       Nahmad:  I just went to log into the site.

       Zuriff:  Yeah.

       Nahmad:  And it says, call customer service.

       Zuriff:  It should all be set up. I don't know why they did that. Let me, uh, it should be all set up.

       Nahmad:  Ok, call them up.

In addition to helping Nahmad and Trincher lay off bets from their sportsbook, Zuriff took bets from various individuals, including Nahmad, who placed bets worth tens of thousands of dollars directly with Zuriff. For example, during a March 31, 2012 phone call intercepted on a wiretap, Zuriff and Nahmad discussed betting on college basketball, including the "juice," or commission, that Zuriff would charge for taking the bet:

       Nahmad:  Cause I want to make my own play, just regular action.

       Zuriff:  Ok.

       Nahmad:  Nothing to do with what Mike does.

       Zuriff:  So off the 8800.

       Nahmad:  Yeah, off the 8800 and then at the end we will combine my figure and that figure.

       Zuriff:  Alright, alright. Makes sense. What do you want?

       Nahmad:  I don't know. Can you tell me what the lines are?

       Zuriff:  3 on Ohio State, and 8 1/2 on the other one.

       Nahmad:  And what's the juice?

       Zuriff:  110. I will give you 106 for you.

       Nahmad:  On which side?

       Zuriff:  Both sides.

    Nahmad:    What's the money line?

    Zuriff:    I think it is like 150. I could look it up.

    Nahmad:    Tell me what the money line is on both sides please.

    Zuriff:    I could look it up. I mean I am sitting in Hawaii at a pool.

    Nahmad:    Can you call me back?

    Zuriff:    Yeah. Pick up the phone. I will call you right back.

During phones call that were intercepted on April 27, 2013, Zuriff and Nahmad discussed booking bets from an individual who had just got out of a rehabilitation and trying to take advantage of him.

    Nahmad:    Where are you, buddy?

    Zuriff:    I'm in Mexico, remember?

    Nahmad:    Remember my guy [REDACTED] — you can't repeat this to anyone — he just got out of rehab. He wants to bet on all the NBA series, prices and maybe some futures. He doesn't want to bet on the computer because he is superstitious.

    Zuriff:    I'll get a phone account for ya.

    Nahmad:    I don't mind going 50/50 with you. I'm doing this without Illya [Trincher] and Noah [Siegel]. I'm doing it completely on my own because I want to make some money. He wants to bet hundreds.

    Zuriff:    I'll take 25% of it.

    Nahmad:    He wants to bet hundreds of it on the series prices and he is going to try to bet hundreds on the futures. I'm going to tell him the most I can lose on a future is 200k. Say one pays out 300k, but he makes four bets, he can't automatically win 300k.

    Zuriff:    Tell me, what do you need.

    Nahmad:    He just called me this morning whispering from rehab. He needs to guarantee them to me again, so we can do it.

    Zuriff:    I got two good options.

    Nahmad:    Call me back because I have to take this call. . . .

Nahmad: I don't think you get it.  Hold on a second; I'm going to step outside my office.  What I want you to understand, we knock this guy off for one million bucks.  His dad is a multi-billionaire.  He himself had to have his brother bail him out without tapping into his trust, without his dad finding out.

Zuriff: You just want to make sure the guarantee is there.  By the way, this stuff Chuck can't know about it.  This guy is totally good for it, but it's just a question of waiting. . . . That's fine.  I don't discuss anything with Chuck. . . .

Nahmad: He actually thinks he is going to win.  So no, hold on.  This is the thing.  He is superstitious if he goes, then we dictate the law.  You can only bet on the computer, we get him stuck, and then it's done.  In order to reel him in again, we have to let him do what he wants, then we can tell him to bet small amounts.

Zuriff: He wants quick money. . . . In it.  I am setting up a hundred dollar account.

Nahmad: Don't do anything yet.  He wants to use, what's "Big on Sports?"

Zuriff: The company on Cris.

Nahmad: It's the company.

Zuriff: It's the Wager Shack.  It's the same thing.

Nahmad: It's the same thing.  Where was he last time, Big on Sports?

Zuriff: So I have him on Big on Sports last time.

Nahmad: I'll call you back.

Zuriff: He wants the line off on Big on Sports and he wants to write 'em.  We are better off with a guy like this giving him the Wager Shack account.

<u>The Plea and Applicable Guidelines Range</u>

On July 25, 2013, the defendant pled guilty, pursuant to a plea agreement, to a Count Eleven of the Indictment, which charged him with the acceptance of financial instruments for unlawful internet gambling.  In connection with the plea, the defendant also agreed to a forfeit $500,000 by the time of his sentencing.

In its November 18, 2013 Report to the Court, the Probation Department calculates a Guidelines range of six to twelve months' imprisonment.  The Government agrees

with this Guidelines calculation, which is consistent with the calculation set forth in the plea agreement.

### The Appropriate Sentence

Under the factors set forth in 18 U.S.C. § 3553(a), the Government respectfully submits that a sentence within the Guidelines range of six to twelve months' imprisonment is appropriate. Specifically, the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, the need for the sentence to promote respect for the law, the need for the sentence to provide for just punishment, and the need for the sentence to afford adequate deterrence to criminal conduct, separately and taken together, warrant such a sentence.

First, Zuriff both ran his own illegal sportsbook and assisted Nahmad and Trincher in operating their sportsbook by using and providing access to websites that were operating illegally in the United States. It was this access to accounts that made Zuriff a sought after connection in the illegal sports gambling world. Second, Zuriff's conduct was not short-lived, but extended over many "years." (Zuriff Sentencing Mem. 10.) And the bets that he personally booked, and that he enabled to be booked on the websites to which he provided access, totaled in the many millions of dollars. Third, despite Zuriff's intelligence, upbringing, and education, he was still not deterred from entering the illegal world of gambling. As such, a Guidelines sentence would serve to deter both the defendant and the public at large.

Accordingly, the Government respectfully submits that a sentence within the Guidelines range of six to twelve months' imprisonment is appropriate.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:     /s/
Joshua A. Naftalis
Harris M. Fischman
Kristy J. Greenberg
Assistant United States Attorneys
(212) 637-2310 / 2305 / 2469

cc: Charles E. Clayman, Esq.
Isabelle A. Kirshner, Esq.